IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH FOWLER,

                Plaintiff,                    OPINION AND ORDER

v.

                                                           23-cv-463-wmc

CHERYL EPLETT, JULIE LUDWIG,
TRACY THOMPSON, and MICHELLE COOPER,

                Defendants.

---

      Plaintiff Kenneth Fowler, representing himself, filed this lawsuit under 42 U.S.C. § 1983 against nurses and prison officials working at the Oshkosh Correctional Institution ("Oshkosh"), all of whom allegedly violated his federal constitutional and statutory rights. Specifically, Fowler claims that defendants: (1) were deliberately indifferent to his potential hip infection, which could prevent a hip reimplantation surgery; and (2) failed to communicate with him in accordance with his needs under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA"). Both claims are subject to screening. 28 U.S.C. §§ 1915(e)(2), 1915A.

      While Fowler is held to a "less stringent standard" in crafting pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), his allegations do not suggest that any of the named defendants were personally involved with his care, let alone were deliberately indifferent to his medical needs. Similarly, Fowler has not indicated that any defendant personally failed to communicate with him in accordance with his needs under the ADA. Accordingly, this lawsuit is subject to dismissal. However, the court will give Fowler an opportunity to

submit an amended complaint that fixes the problems identified below on or before October 9, 2024.

ALLEGATIONS OF FACT[1]

**A. Parties**

Plaintiff Kenneth Fowler is still incarcerated at Oshkosh and seeks to proceed against the following Wisconsin Department of Corrections ("DOC") employees working there during the relevant time period: Oshkosh Warden Cheryl Eplett; Health Services Unit ("HSU") Manager and Nurse Julie Ludwig; Licensed Practical Nurse Tracy Thompson; and Nurse Michelle Cooper. In particular, Fowler alleges that Warden Eplett is responsible for his overall care, while Nurses Ludwig, Thompson, and Cooper are part of the Oshkosh medical staff.

**B. Fowler's Surgeries and Post-Operative Treatment**

On May 27, 2022, Fowler was taken to the Fond du Lac Regional Clinic in Waupun, Wisconsin, to address an open wound in the area of his past hip replacement surgery. During that visit, a non-defendant, Dr. Eric Nelson, ordered "test[s]." (Dkt. #1, at 2.) Fowler was later taken to St. Agnes Hospital on June 9 and June 21, 2022, for additional evaluation. Fowler was then taken to Waupun Memorial Hospital for surgery on June 29,

---

[1] In addressing any unrepresented litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

2022, where he stayed until July 5, 2022.[2]  While at the hospital, he was also prescribed Bactrim, an antibiotic for staphylococcus, with a stop date of August 10, 2022.

On July 7, 2022, Fowler was taken to the Fond du Lac Regional Clinic at the direction of unnamed Oshkosh medical staff to address the "malfunction" of his Prevena incision management device.  A month later, on August 9, 2022, Fowler was then taken to Mercy Hospital to address a draining wound for two days, after which he returned to the Fond du Lac Regional Clinic, where he would later receive a renewed prescription for Bactrim *and* a treatment plan for Oshkosh medical staff.

Throughout this period, Fowler alleges that Oshkosh medical staff violated his Eighth Amendment right to health care by interfering with the proper healing of his wound, including by:  keeping him on an antibiotic for an infection that may or may not be present; administering medication in an irregular manner; and as a result, preventing his possible hip replacement.  Fowler also contends that medical staff are aware he is illiterate but fail to communicate with him in accordance with his needs in violation of the ADA.  Fowler further alleges that he has filed several inmate complaints addressing his concerns, but none have been resolved.

OPINION

I.     **Eighth Amendment Claim**

The Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement and to take reasonable measures to guarantee inmate health and

---

[2] Although plaintiff does not specify what surgery he received, the court will assume it was somehow related to the hip surgery he referenced earlier in his complaint.

3

safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Relevant here, prison officials specifically violate the Eighth Amendment by responding with deliberate indifference to a medical condition that presents an "objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008)).

Construing his complaint generously, plaintiff appears to be alleging that defendants acted with deliberate indifference to his need to heal a post-surgical wound properly, putting him at serious risk of harm. However, plaintiff's present allegations fail to allege how each defendant was *personally* involved in acts of deliberate indifference to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that a complaint at least includes a "short and plain statement of the claim showing that the pleader is entitled to relief." This includes not only providing notice to the defendants of what plaintiff believes they personally did or did not do to violate his rights, but containing sufficient factual allegations to support a claim under federal law. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Here, to demonstrate liability under § 1983 in particular, a plaintiff must allege sufficient facts for a reasonable jury to find that an individual personally caused or participated in a constitutional deprivation. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation") (citation omitted).

Although the court assumes for purposes of screening that plaintiff's post-surgical wound did not heal properly, contributing to his pain and discomfort (and perhaps even

preventing other possible solutions to his underlying condition, including hip replacement), his allegations to date do *not* suggest deliberate indifference by any of the named defendants. Indeed, plaintiff has not even alleged that defendants Eplett, Ludwig, Thompson, or Cooper *actually* knew or had reason to know that he was being kept on an antibiotic for an infection that "may or may no longer be present." (Dkt. #1, at 4.) For Eplett and Ludwig in particular, plaintiff appears to seek to hold them accountable solely by virtue of their supervisory positions as Oshkosh's warden and HSM, respectively. Yet a prison official cannot be held liable under § 1983 by virtue of their supervisory position alone. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisor role). Instead, to maintain a claim against a supervisory defendant, a plaintiff must allege facts showing that the defendant had sufficient *personal* responsibility over the allegedly unconstitutional conduct. Said another way, the facts must support a finding that the supervisor "directed the conduct causing the constitutional violation, or . . . it occurred with [her] knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001) (internal citations omitted). Further, for the other two defendants, Nurses Thompson and Cooper, the reverse is true: plaintiff alleges no facts to find either played a meaningful role in his treatment, much less alter that treatment in the face of direction from non-defendant, advance care practitioners. As currently pled, therefore, Fowler's complaint does not state an Eighth Amendment claim upon which relief can be granted against any defendant.

5

## II.  ADA/Rehabilitation Act Claims

Plaintiff also seeks to proceed against all defendants on a claim under the ADA.  To establish a violation of Title II of the ADA, a plaintiff "must prove [1] that he is a 'qualified individual with a disability,' [2] that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was 'by reason of' his disability."  *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)).  While Congress has abrogated the states' Eleventh Amendment sovereign immunity for ADA violations that also constitute federal constitutional violations, neither the Supreme Court nor the Seventh Circuit has addressed whether ADA violations not implicating constitutional rights may be brought in federal court against a state agency.  *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).  In particular, where an ADA claim is questionable and an unrepresented plaintiff has failed to invoke the roughly parallel provisions of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the Seventh Circuit has suggested reading in a claim under the Rehabilitation Act to avoid this tricky abrogation question.  *Norfleet,* 684 F.3d at 690.  Accordingly, that is what this court will do.

The Rehabilitation Act is substantially identical, and a claim under § 504 of the Act has four elements: (1) an individual with a disability; (2) who was otherwise qualified to participate; (3) but who was denied access solely by reason of disability; (4) in a program or activity receiving federal financial assistance (which all state departments of corrections do).  *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012).  Here, plaintiff

alleges that he has a learning disability impairing his ability to read communications with defendants, which on its face meets the pleading requirements of both the ADA and Rehabilitation Act; indeed, the DOC's obligation to provide accommodations for his disability was the subject of a prior lawsuit before this court. *Fowler v. Wall*, No. 14-cv-028 (W.D. Wis. Jan. 13, 2014).

That said, plaintiff has not alleged sufficient facts for a defendant to be given notice or a reasonable jury to find *how* the DOC denied him access to healthcare at Oshkosh because of his disability. And although plaintiff's allegations support an ADA/Rehabilitation Act claim, he has yet to identify a proper defendant in his complaint. Rather, the only appropriate defendant for a claim based on a failure to accommodate a disability under the ADA and the Rehabilitation Act is the Wisconsin Department of Corrections. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F. 3d at 670 n.2.[3]

Consistent with circuit precedent, therefore, the court will give Fowler 21 days to submit a proposed, amended complaint that provides more details about the claims he wishes to pursue. *See Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). In particular, Fowler should draft his amended complaint as if he were telling a story to someone who knows nothing about the events at hand, focusing on providing a timeline of the material events, and explaining exactly what each defendant personally knew and did (or did not do) about his hip conditions, his surgery and recovery from the same, and

---

[3] While plaintiff may not proceed on a claim against any of the named defendants, therefore, he *may* be able to do so against the DOC, but only if he explains in an amended complaint how he was denied access to healthcare by virtue of his disability, when those denials took place, and who was involved in them.

his disabilities and accommodations required under the ADA, including the DOC itself. After the court receives Fowler's proposed, amended complaint in this lawsuit, the court will screen it and determine whether any claims in this case may proceed further.

ORDER

IT IS ORDERED that:

1) Plaintiff Kenneth Fowler's complaint is DISMISSED without prejudice under Federal Rules of Civil Procedure 8.

2) Plaintiff has until **October 9, 2024**, to respond to this order by proposing an amended complaint addressing with specific allegations the defects in the original complaint discussed in this Opinion above. If plaintiff fails to respond by that date, the court will dismiss his claims with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b).

Entered this 18th day of September, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge